May it please the Court, my name is Simon Salinas, I am the attorney for the petitioners. The first point I'd like to bring is the matter of the recent decided case by the United States Supreme Court, Obama v. Immigration and Customs Enforcement. That seems to take care of the issue relating to whether it's proper for the Board of Immigration Appeals to make a final decision on removing a respondent. I will defer to the Court to make a final determination, but I concede that probably takes care of that issue. Which case are you talking about? It's a recent case that the INS sent decided by the Supreme Court recently. It's called Hama J.A.M.A. v. Immigration and Customs Enforcement. Who is second? Citation is 125. Well, Ali is still law of the circuit. The Ali panel is now looking at opinions. So anyway, this is not an issue you need to spend any time on. Okay. That's in somebody else's hands right now. The second matter, Your Honor, I want to concede that there was an issue relating to genital mutilation that was not properly presented. It was not presented in the lower courts that I want to concede being not an issue in this Court at this time, because it was not properly presented. Secondly, I'd like to state that the Board of Immigration Appeals states in its decision in the first page that we conclude that the lead respondent failed to prove that any harm she suffered was on the account of clan membership and was not due to general conditions of upheaval present in Somalia at that time. On page 18 of the government's brief, the government states, the Board, however, reasonably determined that she had not established that she was assaulted because of her clan membership, which so far agrees with the first part of the Board of Immigration Appeals. The second part states rather that the evidence showed that she was a victim of general conditions of upheaval present in Somalia at that time. However, the Board of Immigration Appeals states and was not due to general conditions of upheaval present in Somalia at that time. This is a contradiction of the Board of Immigration Appeals. It seems to be properly presented by the government's brief, but it's not what the BIA concluded. The BIA in this conclusion is contradicting itself. Either she was a member of a clan, and supposedly, according to the conclusion, she was not, or she was injured because of the conditions of upheaval in the country. But not deny both opportunities. Clearly, we maintain that she was a member of a clan. At all times throughout, not only a simple assault, but the rate of respondent in the killing of her first husband, she was a member of the Chuni clan, and that was specifically the reason why she was assaulted. And they came to her house, killed her first husband, and took her and raped her. Therefore, we maintain that. There's evidence of all this violence. The question is, how do you tie it to her worship in the Chuni clan? Your Honor, the respondent's testimony is full of information relating to the different clans and also the reports of the numerous clans. She stayed at all times of the minority clan called the Chunis, which they were members of. And it appears that was a result of the larger clan taking over the hometown where respondents lived and going over there and assaulting the smaller minority clans and to go to murder and rape the women without just any proper provocation. Well, I mean, there are lots of reasons that people commit mayhem and rob and rape and commit violence. Greed, generally exercise of power. There's no – they do it just because they can do it and they have the power to do it. But what you needed to show is that this was done on account of her membership in her clan. And there's very sparse evidence of that. The only thing I could see that there was is that while they were raping her, they said something like, see, you're powerless. You're a member of the Chuni clan. You're powerless. We can do anything we want to. We're going to rape you now. We can do anything we wanted to. I think that's the only evidence there is. Yes, Your Honor, and it is not required that you have a complete, absolute, clear and totally and wholly basis on a social group, as long as there's some part in which it may be properly – But even if you believe that's what they said, it doesn't hardly sound like what they're saying is we're doing it to you because, Antonio, what they're saying is we have the power to do it. You're totally powerless. And we're going to do what we can because we are greedy and we like sex and we're going to just do these things because we have power over you. It's a little hard to say that one reference to her clan shows motivation or the compels finding by the IJ that that was their motive. Your Honor, I think the strongest argument that can be in favor is the fact that this was following the falling of the main leader of the country and it became clans versus clans, the majority clans against the minority clans. There was definitely a political upheaval of clans versus clans. They were not of any other basis of the stronger clans taking against other social groups, minority clans. But that argument proves a whole lot. It means that anybody that comes out of Somalia, pretty much, since there's a lot of clan strife, it doesn't matter what clan they're on. They're probably the majority clan, whatever that is. Since there's a lot of inter-clan fighting, anybody that comes out could say, well, I was persecuted because of my clan because, look, there's all this fighting going on between clans. So that automatically makes everybody who comes out of Somalia eligible for asylum. You don't need an IJ anymore. You just say, okay, thank you. Your Honor, if you have the basis for being a social group, that is the basis. If you are a minority clan and you're being persecuted for that, then that is your basis. No matter what age, it was established that if you are a clan member in Somalia, that you are a member of a social group. No doubt about that. No doubt about that, that you're a member of a social group. But the persecution has to be on account of that status. They go after you because you are Jewish or Christian, if you're in a Muslim country, or something like that, and say we're going after you because of your religion. That is on account of your religion. If there's a lot of upheaval in the country and people who have weapons, basically rape and pillage and rob the people who don't, then they're not really doing it because of their clan status. They're doing it because they can. Your Honor, here there was... That's what the IJ held here. It's a little hard to say that that was a clearly wrong conclusion. Your Honor, it appears that there was lack of a lot of information for the immigration judge to really establish that the whole information was correct. To provide more information, more evidence? Well, Your Honor, I'm talking about that's what the immigration judge concluded, that he needed more information in order to be able to establish that in fact these facts really took place. But a petitioner bears the burden, right? Yes, Your Honor. A petitioner bears the burden, so if there's lack of evidence, that counts against her. That's correct, Your Honor. However, the immigration judge conceded that while... Was she represented before the IJ? Yes, Your Honor. She was represented by another attorney. Another attorney. Yes, Your Honor. So you got this case afterwards? Yes, Your Honor, I got it today. It's always terrible to inherit something. It's very difficult to try to get up to that, especially in an area that's kind of complicated. You've used up your time. Why don't we hear from the government? I'll give you a minute or so. Thank you, Your Honor. Good morning. May it please the Court. Jan Redfern for the Respondent. Your Honors, the petitioner has not presented compelling evidence for this Court to reverse the immigration judge or the Board's decision. Well, let me start from the decision itself. The per curiam decision says while Klan membership may provide a basis for protection under the Act. So we start from the proposition that Klan membership may provide a basis for protection under the Act. Yes, Your Honor. And she's clearly a member of a different Klan from the Klan that was attacking and raping her. Well, it's not clear that she is because the immigration judge found that she failed to present any corroborating evidence and the evidence she did present, her testimony, was questionable. She says you are – they were saying things like you are a toonie. Is there any evidence that she was not a toonie? There's no evidence. But as the judge recognized, she has the burden of proving asylum eligibility, which would include her identity, her membership in a Klan. And the immigration judge said that her evidence was questionable. He didn't know what to believe. A lot of her evidence was questionable. So it's not even clear that she was a member. But even assuming, for the sake of argument, that she did establish somehow that she was a member of the toonie Klan, that can be the basis for asylum eligibility. And she says they were saying things, referring to her attackers and the people who raped her, they were saying things like you are a toonie. You have no power in this country. See, I take you here. Siad Barre thought he was keeping on here and he's not here anymore. We're able to do what we want to. Why isn't that susceptible of a strong inference that had she not been toonie, she wouldn't be singled out for a rape or attack? It seems, as the board says, demonstrate that the harm was at least in part on account of that membership. And they seem to know that she was a toonie according to her testimony, and that's why she was about to be raped. Why isn't that enough? It's not enough, Your Honor, because that is basically an insult. She just said that it was like a slur. They called her a toonie contemporaneously with the act of rape, but that does not compel the conclusion that she was raped because she was a toonie. You mean they were raping their own people from their own clan too? There is evidence in the record that they were raping other minority clan members, not just toonie members. So this clan was imposing its will on all people who were not part of its clan. Yes, Your Honor, that's true. It seems to me, looking at this, that the reason why she got attacked and raped was because they knew she was a toonie, and that's why they singled her out. Other women not in their group would not have been victims of this. Well, the government would disagree and state that the evidence is not compelling that she was raped because she was a toonie. And the record evidence, in particular, page 256 and 57, states that minority clans were singled out, not just because they were members of minority clans, but for various reasons, such as military defenselessness, social isolation, and other reasons, not just because of their clan membership, but because of the circumstances they were in at the time. And in this case, the members who attacked her just stated, You're a toonie. We are the USC. We're taking control over the company. You're powerless. We can do anything we want to, stating this is indiscriminate violence against her or anyone else who has no power,  The leader has fled the country. So because she is attacked and called a toonie at the time doesn't necessarily compel the conclusion that she's attacked because of her clan membership. And in this case, I invite the court's attention to the board decision in Ray D.V., which the petitioner has cited in his brief. In that case, the board recognized that a rape by soldiers who contemporaneously said, You're the one who supported a fanatic for Aristide, that that person was raped because of her membership or political opinion. And in that case, there was more than what the petitioner has. The petitioner has basically, she stated, they said I was a toonie. There's no other evidence except her testimony. Who was Mohamed Siad Barre? That was the dictator of Somalia at the time. Right. And what clan did he belong to or protect? I believe he was in the same clan or a subset. As the toonies. Yes, Your Honor. So why isn't that very similar to the case you just talked about? Here they identify her as a toonie. And they say your pal Siad Barre is not here anymore. You're about to go down. Will you like it or not? Because in Ray D.V., there was more in the evidence. The evidence established that the person was persecuted in direct retaliation for her support of the leader. There's no evidence of that here. They talk about Siad Barre in the same sentence, according to her. And it's really just evidence that he's gone now and you're powerless. Not your leader is gone, so I'm attacking you because you were a member of his clan. It's more to show she's powerless because the leader is not there to protect her. And, again, in Ray D.V., the attackers knew the petitioners. They knew her by name. They knew her membership. They targeted her previously to the rape attack. And at the time they targeted her previously, they made threats of future harm. And none of that is in the record of evidence in this case. So the board can recognize when there is an attack based on one of the statutorily protected grounds, and that is not the case here. Basically, to sum up, with respect to the attack against the petitioner, the evidence doesn't compel the conclusion that she was attacked because she was a member of the Tooney clan, and their boasting indicates that they would attack anyone who is not a member of their clan. And the petitioner, in her brief, characterizes the evidence as a fair presumption, which, of course, the court is aware is not the standard of review. It's substantial evidence that is so compelling that a reasonable fact finder could not fail to find the petitioner was attacked because of her Tooney clan membership. Did the I.J. conclude that she was not a Tooney or that she had failed to prove that she was a Tooney? Well, indirectly, yes, because the immigration judge found that she lacked credibility and offered no corroborating evidence to support her claim. That was the only basis of the immigration judge's denial of all of her claims for relief. And she hasn't challenged the immigration judge's adverse credibility determination either to the board or to this court. How do you support a claim that you're a member of a particular clan other than by saying so? There's no document is there that says you're a member of a particular clan? Well, she could have submitted declarations or other corroborating evidence. It's not for the government to suggest what she should have done. It's her burden of proof. And she failed to establish any type of corroborating evidence. She might also have been believed. She may have been believed, but she wasn't. And she hasn't presented any compelling evidence to the contrary to this court or to the Board of Immigration Appeals. Although you have to concede that these are difficult things to prove. Oh, yes, obviously, Your Honor. And the government recognizes that the country conditions in Somalia are dangerous. But as the court recognized... I think you could say that as bad as it gets. It's as bad as it gets, yes. But that doesn't relieve the petitioner of the obligation of establishing that her persecution was on account of one of the statutorily protected grounds, which she failed to do. Her claim is also undermined by several other factors. First of all, she stayed in Somalia for three years, nearly three years, in the same house in which she was allegedly raped. She worked. She married. She had a child there. And she stated that she resided there peacefully. Nothing forced her to leave. So when she left the country, she wasn't leaving because of the past persecution that she testified about. She left, she stated in her testimony, because her husband was unable to work the farm that they owned or to own animals. So the incident of which she described was not the primary impetus for her leaving the country. And she also remained in Kenya for six years. Nothing required her to leave. She stated she left voluntarily and went to Nairobi and stayed for two months. So nearly nine years later, after the incident, she's arriving in the United States and wants the court to believe that she was persecuted in her country and she's leaving the country because of that persecution. What was the asylum officer's assessment in this case? The asylum officer's assessment, I believe, was that she had not established persecution. With respect to the well-founded... Why does the IJ say, discount the asylum officer's assessment? I believe because there was no contemporary... The asylum officer's assessment has been given little significant weight. Yes, Your Honor, and I believe it's because there's no contemporaneous voice recording or statement made by the petitioner at the time of the asylum officer's assessment. Which doesn't hurt her if he discounts it because the immigration officer found that she hadn't established asylum. And she's never raised that claim to the board. She raises it for the first time. And as we stated in our brief, she's waived that issue or failed to exhaust her administrative remedies by failing to raise that issue prior to this court. What did the board do with the issue for credibility? It appears that the board's primary concern was that the petitioner failed to establish persecution on account of a statutory protected ground. And so if we disagree with that, what are we required to do under Ventura? Remand for the board to grapple with the issue of credibility? Well, it's clear in the board's decision that it already noted the immigration judge's adverse credibility finding. It noted that in its decision, although... What does noted mean? That it's not overruling it. It's noting that it... It's not accepting it either. Well, it appears to not be a concern to the board because... It went off on another ground. So I'm asking if we disagree with your assessment of the first part. Does Ventura require us to remand or not? I would say not with respect to credibility, no. Okay. The way you view it is that the board's decision is an affirmance of the credibility, adverse credibility finding? Yes, Your Honor, because it didn't... It agreed with the immigration judge's decision. So the government's position is that the adverse credibility determination is still in... Has been dispensed with by the board's decision because, in essence, it didn't overrule the IJ's adverse credibility determination. It didn't seem to be concerned with it. It just didn't really address it that much because the primary concern was the on-account-of ground. She came to the United States from what country? From Kenya, Your Honor. Yes, Niobe, Kenya, Your Honor. I see that my time is up. If there are no further questions, the Respondent respectfully requests the Court to deny the petition for review. Thank you. Thank you. Do I have a minute for Obama? The immigration judge stated in his decision on page number 8 that although there were a lot of inconsistencies, it was an unbelievable testimony. The judge stated the Respondent's testimony regarding the personal experiences that she allegedly encountered held up reasonably well during the hearing. It seems to state that the facts that she expressed relating to her personal experience seem to be credible. What about this point that she stayed in the country for three more years and then stayed in Kenya for six years? It does seem to attenuate significantly the claim that she left because of this resident. Your Honor, the immigration judge raised the issue relating to firm resettlement. However, in the decision of Abdal v. Ashcroft, 242F, 3rd and the 3rd Circuit, 2001, for the denial of an asylum for a citizen of Somalia, the Court affirmed in part and reversed in part, remanded the case for the INS to establish the content of the South African law, which in this case would be the Nigerian law, I'm sorry, the Kenyan law, to establish whether she in fact had any privileges or had been given any. That's a different question. That goes to the question of whether she was firmly resettled in Kenya so that she can't claim to be a refugee from Somalia. That's a different legal issue. I was asking a different question. The question is, given that nine years passed from the time of the incident to the time she came to the United States,  doesn't that attenuate, factually attenuate her claim that she fled Kenya, fled Somalia, on account of this incident? She stayed in the country for three years. She then stayed in another country, a neighboring country. I guess Kenya and Somalia are neighboring countries. For six more years, it sort of tends to make her claim that she was fleeing because of this horrible incident a little bit less believable. I understand, Your Honor, and I think it has your argument and has merit. However, she was away from home. She was not at home. She was at a refugee camp. Well, during the three years in Somalia, she was not at home? I thought she was. Well, in Somalia, yes, Your Honor. However, she had the fantastic pain of the death of her husband and the remembering of the rapes and so on. So, in her mind, I don't think she could. Well, but this goes a little bit to her credibility. I mean, she says this horrible thing happened, and then she goes on with her life for three years in the country. Nothing happens to her, and she doesn't flee, nothing. And then she goes for six years and lives in another country. It does suggest that maybe she was inventing the whole thing, which is what the IJ seems to think, that she was making up the story. But, Your Honor, that's a conclusion that is being argued by the government. However, I think the immigration judge… I'm asking you to respond to that point. Well, Your Honor… Why is that a perfectly plausible thing for the IJ to say? Well, Your Honor, I think that would be undermining the tremendous suffering that she went through. But I can see… Even if she's believed, she's telling the truth. I can see there was a lot of information missing that could have been taken in the negative way. Okay. Thank you. Thank you, Your Honor. The case is sorted. We'll cancel it. We'll next hear an argument in…
judges: Kozinski, Trott, Sand